**Nate GRUBISICH, Plaintiff,**

v.

**P. A. ESPERDY, District Director of the Third District of the Immigration and Naturalization Service of the Port of New York, Defendant.**

United States District Court
S. D. New York.
July 10, 1959.

Harry M. Justiz, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty. for Southern Dist. of New York, New York City, for defendant. Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel.

DAWSON, District Judge.

This is a motion by plaintiff, brought on by an order to show cause containing a temporary restraining order, for an injunction *pendente lite* seeking to restrain the defendant from enforcing an order for plaintiff's deportation. Defendant has made a cross-motion for summary judgment dismissing the com-

plaint under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The basic undisputed facts in this case are as follows:

In March 1951 the Immigration and Naturalization Service instituted deportation proceedings against the plaintiff by the service upon him of a warrant of arrest. He was charged with being subject to deportation pursuant to the Act of October 16, 1918, as amended *, in that subsequent to his entry he became a member of a proscribed class set forth in that statute, to wit, an alien who was a member of the Communist Party of the United States.

An additional ground alleged at that time was that plaintiff, a native and citizen of Yugoslavia, had made his last entry into the United States at the Port of New York on May 29, 1933, and that the reentry permit which he presented was invalid since it was procured by fraud or misrepresentation. He was in possession of what at that time purported to be a valid reentry permit which was procured on the representation that his last entry into the United States was in 1921, whereas the Government alleges that he entered unlawfully in 1926.

The deportation hearing was held commencing on March 24, 1953. Plaintiff was represented by counsel and had the benefit of an interpreter. He nevertheless refused to be sworn or to give testimony under oath. While he did make certain unsworn statements, he either stood mute or invoked the statutory privilege against self-incrimination with respect to any questions asked relevant to the charges contained in the warrant of arrest which formed the basis for the deportation proceedings.

The basic issues which this Court must decide is whether plaintiff was a "member" of the Communist Party within the meaning of the Internal Security Act of 1950, 50 U.S.C.A. § 781 et seq., and whether his reentry into the United States in 1933 was accomplished by means of a reentry permit procured by fraud or misrepresentation. An affirmative finding on either of these issues would sustain his deportation at this time.

A review of the record of the hearing in the deportation proceedings against this plaintiff is highly informative. With respect to the first charge the Government introduced two witnesses, both of whom testified as to plaintiff's membership in the Communist Party of the United States from 1932 to 1935 and from 1937 to 1939. The first witness testified that she was a member of the Communist Party: that she attended meetings of the Yugoslavic fractions of the Communist Party: that she held office in the Communist Party organization. She further stated that she attended schools of the Communist Party and identified plaintiff, who was present at the hearing, and indicated that she saw plaintiff at every Communist Party meeting of the particular fraction, as well as at closed meetings. It was her testimony that plaintiff spoke at closed meetings; that he reported on his activities on the waterfront as a Communist Party member, and that in general he was an active working member of this unit. It was her testimony that only members of the Communist Party could attend fraction meetings and speak at these meetings, and she further stated that plaintiff gave reports of various assignments given to him as a Communist Party member.

The second witness examined by the Government with respect to plaintiff's deportability as a member of the Communist Party was the husband of the first witness. He stated that he was a member of the Communist Party fraction in the Longshoremen's Union and that plaintiff attended Communist Party meetings and that he was known as a member of the Communist Party. He testified further that he saw the plaintiff pay his dues and that he had seen plaintiff's membership book.

* Now 8 U.S.C.A. § 1182.

Alienage was established both by plaintiff's unsworn statements and matters of record admittedly relating to him. The Special Inquiry Officer, in his decision, sustained the first charge of deportability on the ground of membership in the Communist Party, independent of the fact that plaintiff refused to testify. He analyzed the testimony of the Government witnesses and considered their credibility, as well as the fact that their testimony was unrefuted. Accordingly, the Special Inquiry Officer found that plaintiff, an alien, was subject to deportation under the Act of October 16, 1918, as amended.[1] As to this point plaintiff maintains that under the applicable law the Government did not adduce such evidence as to his Communist Party activities as would constitute a "meaningful association" with it, and thus subject him to deportation. The argument which supports plaintiff's contention is discussed in two decisions of the United States Supreme Court.

■ In Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 741, 98 L.Ed. 911, the Supreme Court interpreted the statute which is applicable in this action. The Supreme Court held that support, or even demonstrated knowledge of the Communist Party's advocacy of violence, was not intended to be a prerequisite of deportation. The Court said:

"* * * It is enough that the alien joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will * *."

The Court, in effect, held that the Internal Security Act of 1950 dispensed with the necessity of proving in each case where membership in the Communist Party was made the basis for deportation, that the party did, in fact, advocate the violent overthrow of the Government. At the same time, the Court indicated that a person's relationship to the Communist Party might be so nominal, even though technically a member, as not to make him a "member" within the terms of the Act. In the Galvan case the petitioner disclosed that he had joined the Communist Party of his own free will, giving the time and place of doing so, and indicating generally that the distinction between the party and other groups was clear in his mind. There was also evidence that he had been elected an officer of the Spanish-speaking Club, an alleged Communist Party unit. The Court held that this evidence was sufficient to support a finding

---

1. The provision permitting deportation of members of the Communist Party is found in the Internal Security Act of 1950, which was subsequently incorporated in the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (6) (C). It reads as follows:

"§ 1251. Deportable aliens—General classes

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

* * * * *

"(6) is or at any time has been, after entry, a member of any of the following classes of aliens:

* * * * *

"(C) Aliens who are members of or affiliated with

"(i) the Communist Party of the United States;

"(ii) any other totalitarian party of the United States; (iii) the Communist Political Association; (iv) the Communist or any other totalitarian party of any State of the United States, of any foreign state, or of any political or geographical subdivision of any foreign state; (v) any section, subsidiary, branch, affiliate, or subdivision of any such association or party; or (vi) the direct predecessors or successors of any such association or party, regardless of what name such group or organization may have used, may now bear, or may hereafter adopt: *Provided*, That nothing in this paragraph, or in any other provision of this chapter, shall be construed as declaring that the Communist Party does not advocate the overthrow of Government of the United States by force, violence, or other unconstitutional means * * *."

of membership in the Communist Party and sustained the order of deportation. See also, Schleich v. Butterfield, 6 Cir., 1958, 252 F.2d 191.

Thus in Galvan the Court laid down an understandable rule which could be used as the basis for deportation in subsequent proceedings. This rule would lie today unchallenged were it not for a subsequent decision of the same tribunal which modified to a very slight degree the definition of a "member of the Communist Party" within the context of deportability. The subsequent decision was Rowoldt v. Perfetto, 1957, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140.

In Rowoldt the Court again considered what constituted membership in the Communist Party. In that case the petitioner was an alien who entered the United States in 1914. He stated that he had joined the Communist Party, paid dues, attended meetings and remained a member until he was arrested in connection with deportation proceedings, which was at the end of 1935, and that he was probably a member for about one year. He also worked for a while as a salesman in a bookstore run by the Communist Party. The Court said that, bearing in mind the solidity of proof that is required for a judgment entailing the consequences of deportation, it could not say that such evidence established the kind of "meaningful association" required by the Internal Security Act of 1950, as amended; that in the light of such evidence the dominant impulse of his "affiliation" with the Communist Party may well have been wholly devoid of any "political implications." The judgment of deportation was reversed.

A careful reading of these two decisions clearly indicates that Rowoldt did not change the law with respect to the proof necessary to show membership in the Communist Party. In Rowoldt, the Galvan case was recognized as the controlling authority. The different ruling was the result of different factual situations. The Court closed its opinion in the Rowoldt case by saying:

" * * * The differences on the facts between Galvan v. Press, supra, and this case are too obvious to be detailed." [355 U.S. 115, 78 S.Ct. 186.]

In the present case the testimony of the two witnesses clearly establishes that the plaintiff was an active working member of the Communist Party. He belonged to the Party and participated in its activities for a sufficient period of time to warrant a finding by the Special Inquiry Officer that plaintiff had a "meaningful association" with the Communist Party. A review of the record of the hearing and the other documents submitted in this action compel a finding which sustains the determination of the administrative tribunal. Within the meaning of the Act, and the subsequent case law, plaintiff was a member of the Communist Party, subjecting him to deportation under the statute.

The second ground upon which the Government seeks to deport the plaintiff is premised on the fact that at the time of his last entry into the United States he was not entitled to enter this country as a returning resident because his reentry permit, which he presented in support of his application to enter, had been obtained by fraud or misrepresentation and was therefore invalid.

Any coming of an alien to the United States from a foreign country is an entry within the meaning of the statute and such an entry, if illegal, could constitute a basis for deportability. The evidence sufficiently demonstrates that plaintiff made an entry into the United States in 1926. In his complaint he alleges that he entered the United States in 1926 through Calexico, California, "on foot without having been inspected." This entry was an illegal entry and was made by crossing the border from Mexico, and was testified to by a person who entered with him at that time. This was his last entry before 1933 and should have formed the basis for plaintiff's application for a reentry permit in 1932

when he left the United States to go to Yugoslavia and returned therefrom in 1933.

In 1932, under § 10 of the Immigration Act of 1924 **, plaintiff was not entitled to a reentry permit because he had not been legally admitted to the United States on his last entry in 1926.

■ Plaintiff misrepresented on this application for a reentry permit by alleging that he had made his last entry in 1921, when in fact his last entry was in 1926 and was illegal, in that he entered without inspection and was not admitted for permanent residence. The procurement of the reentry permit was thus obtained by fraud or misrepresentation which, therefore, nullified it as forming the basis for permitting plaintiff's reentry in 1933 as a returning resident.

■ The record, both documentary and otherwise, demonstrates that plaintiff entered the United States in 1933 at the Port of New York after his trip abroad, and that entry properly formed the basis for his deportability on the second ground in this action. The Special Inquiry Officer found that the plaintiff was properly deportable. This basis for deportation, namely, that plaintiff did not have a valid reentry permit, has been held to be a sufficient basis for deportability. See, United States ex rel. Poppovich v. Karnuth, D.C.W.D.N.Y. 1938, 25 F.Supp. 883.

The finding of the administrative tribunal that plaintiff was illegally in the United States as a result of his 1933 reentry finds more than ample support in the record. It is hereby sustained as a sufficient ground for deportation.

■ Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of the Government. In the enforcement of these policies the Executive branch of the Government must always respect the procedural safeguards of due process. However, the formulation of these policies is entrusted exclusively to Congress and has become about as firmly imbedded in the legislative and judicial tissues of the body politic as any aspect of our Government.

In the instant action the evidence adduced during the administrative procedures clearly establishes plaintiff's deportability under the Acts of Congress. The language of these statutes governs. Plaintiff's motion for an injunction is denied, and the temporary restraining order is vacated. Defendant's motion for summary judgment is hereby granted. So ordered.